**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

EXOBOX TECHNOLOGIES CORP.,

        Plaintiff,

vs.

ZACHARY TSAMBIS,

        Defendant.

Case No. 2:14–cv–501–RFB–VCF

**<u>ORDER</u>**

      This matter involves Exobox Technologies' civil action against Zachary Tsambis for intentional interference with Exobox's business and civil conspiracy. Before the court is Exobox's Motion to Compel (#26[1]). Tsambis filed an opposition (#29); and Exobox replied (#31). For the reasons stated below, Exobox's Motion to Compel is granted.

**BACKGROUND**

      Plaintiff Exobox Technologies is a publically traded company. (Compl. (#1) at 1). It wanted to acquire a majority stake in Cherubim Builders Group, LLC. (*Id*.) To do so, Exobox was required to file a Form 8-K Current Report that publicly announced the merger. (*Id*.) This allegedly upset one of Exobox's shareholders, Defendant Zachary Tsambis.

      Tsambis took to the internet-message boards on iHub, a website that Tsambis moderates. (*Id*.) He allegedly made false statements about Exobox and threatened to file a lawsuit in Texas to enjoin the merger. (*Id*. at 2). "[O]ur holdings," Tsambis allegedly wrote, "will become burnt toast if we don't stop this deal." (*Id.* at 4). Tsambis even emailed Exobox's Chief Executive Officer, saying "there is a die-

---

[1] Parenthetical citations refer to the court's docket.

hard group of large shareholders who I believe would rather see this ship sink than to see someone else make off with any of the leftover goods." (*Id*.)

True to his alleged threats to commence a lawsuit, Tsambis allegedly used iHub to solicit and obtain funds from other Exobox shareholders. (*Id*.) "[W]e're going to need a very high-priced securities attorney (which we may have already found)," he wrote. (*Id*.) Other iHub users, including NoModerator, TheLaserGuy, AskMrOwl, muskratcuzzin, exoman, bigdaddy2009, PRU, Apohavol, lakebound, beninsac, astrofan, ag28882, sosjtb, Kwayne, Bubba Says, mac40, the_kube, and highstakes joined in Tsambis' effort. (*Id*.)

On February 28, 2014, Tsambis filed suit in Harris County, Texas using funds from these unidentified co-conspirators. (*Id*.) The lawsuit worked. Exobox's proposed merger with Cherubim Builders Group, LLC died.

On April 3, 2014, Exobox commenced this action for civil conspiracy and intentional interference with Exobox's business. The parties are currently in the midst of discovery. The following three interrogatories and three document requests are now at issue:

> Interrogatory 1: Identify each and every Person and/or entity that assisted in answering these interrogatories.
>
> Interrogatory 2: Identify each and every Person and/or entity that contributed financially in any way, and in any amount, to any and all litigation costs for the Texas Case, including, but not limited to, legal fees, accounting fees, expert witness fess, and any other costs or fees incurred to support the preparation and litigation of the Texas Case.
>
> Interrogatory 3: State with specificity all facts and identify all Documents relating to and/or concerning Tsambis' Solicitation of financial contributions made by the Persons and/or entities named in response to Interrogatory No. 2.
>
> Document Request 1: Produce all Documents referenced, identified, referred to and/or consulted in responding to Plaintiff's First Set of Interrogatories to Tsabmis.
>
> Document Request 2: Produce all written Communications, Contracts, and/or Documents relating to and/or concerning the payment of funds used, or to be used, to prepare for,

> file, and/or maintain the Texas Case, including, but not limited to, receipts, copies of checks, and/or other evidence of payment.
>
> Document Request 3: Produce all written Communications between Tsambis and his Agents or other Persons relating to and/or concerning the solicitation and/or receipt of funds received for the purpose of furthering the cause of preparing for the Texas Case, filing of the Texas Case, and continuing to litigation the Texas Case.

Tsambis refuses to comply with Exobox's discovery requests because he does not want to disclose the names of the alleged co-conspirators or any documents pertaining to their payment of funds for the Texas suit. This information, he argues, is protected from disclosure by the attorney-client privilege.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. In pertinent part, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Rule 26 defines relevant information as any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The Supreme Court states that Rule 26 affords liberal discovery. *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Liberal discovery "serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).

Where—as here—a party resists discovery, the requesting party may file a motion to compel. Rule 37 governs motions to compel, and provides that a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory submitted under Rule 33" or "fails to respond" to a request under Rule 34. Before moving to compel, Rule 37 requires the movant to include a certification that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery before seeking judicial intervention. FED. R. CIV. P. 37(a)(1); *see also* LR 26-7(b); *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996) (discussing the District of Nevada's meet-and-confer requirements).

The party resisting discovery carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must show that the discovery request is overly broad, unduly burdensome, or irrelevant. *Teller v. Dogge*, No. 2:12-cv-00591-JCM, 2013 WL 1501445 (D. Nev. Apr. 10, 2013) (Foley, M.J.) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253–4 (S.D. Ind. 2000).

To meet this burden, the resisting party must specifically detail the reasons why each request is improper. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). Boilerplate, generalized objections are inadequate and tantamount to making no objection at all. *Id.* (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (objecting party must show a particularized harm is likely to occur if the requesting party obtains the information that is the subject of the particular objections; generalized objections are insufficient)).

Therefore, the party opposing discovery must allege (1) specific facts, which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence, or (2) sufficient detail regarding the time, money and procedures required to comply with the purportedly improper request. *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524 (D. Nev. 1997) (citations omitted); *Cory v. Aztec Steel Bldg.*, Inc., 225 F .R.D. 667, 672 (D. Kan. 2005).

The court has broad discretion in controlling discovery, *see Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and in determining whether discovery is burdensome or oppressive. *Diamond State Ins. Co. v. Rebel Oil. Inc.*, 157 F.R.D. 691, 696 (D. Nev.1994). The court may fashion any order which justice requires to protect a party or person from undue burden, oppression, or expense. *United States v. Columbia Board. Sys., Inc.*, 666 F.2d 364, 369 (9th Cir.1982) *cert. denied*, 457 U.S. 1118 (1982).

**DISCUSSION**

Exobox's Motion to Compel presents one question: whether the attorney-client privilege protects Tsambis from disclosing information regarding his alleged co-conspirators.

The attorney-client privilege protects confidential communications between attorneys and clients that are made for the purpose of giving or receiving legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It extends only to communications and not to facts. *Id.*, at 395–96 (quoting *Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962)). The burden of proving the privilege rests on the party asserting the privilege. *United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002).

The attorney-client privilege is defined as follows: "(1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection is waived." 8 WIGMORE, EVIDENCE § 2292 (1961); *see also United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). When determining whether a document seeks legal advice, courts have examined the nature, content, and context in which the document was prepared. *See LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 598 (D. Nev. 2012) (citations omitted). Blanket assertions of attorney-client privilege are "extremely disfavored." *Martin*, 278 F.3d at 1000. Because the privilege impedes full and free discovery, it is strictly construed. *Weil v. Inv. Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

The attorney-client privilege does not protect against disclosure in this matter for four reasons. First, the attorney-client privilege only protects communications between a client and his or her attorney that are made for the purpose of obtaining legal advice. *Graf*, 610 F.3d at 1156; *see also LightGuard*

*Sys., Inc.*, 281 F.R.D. at 560–02 (finding that an internal memorandum is not protected by the attorney-client privilege). Here, Exobox's interrogatories and document requests seek information regarding communications between Tsambis and his unnamed co-conspirators. The attorney-client privilege is inapplicable here. As the party asserting the privilege and resisting discovery, Tsambis bears the burden of satisfying each element of the attorney-client privilege. *Martin*, 278 F.3d at 999–1000; *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Tsambis opposition, however, does not argue that the attorney-client privilege applies. It merely assumes that the privilege applies and argues that an exception to an exception keeps the privilege enact.

This brings the court to its second point. Exobox's discovery requests seek, *inter alia*, the names of Tsambis' co-conspirators. The parties agree that the attorney-client privilege protects communications, not facts or the identity of an attorney's client. *United States v. Sherman*, 627 F.2d 189, 190 (9th Cir. 1980); *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977). However, they dispute whether an exception to this exception applies, which would bar the disclosure of the identities of Tsambis' co-conspirators.

Despite the general rule is that identity of an attorney's clients is not a matter within the attorney-client privilege, *see id*., Tsambis argues that his co-conspirators' identities should be barred from disclosure under the rule of *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960). In *Baird*, a tax attorney representing a group of taxpayers submitted a check for past-due taxes to the Internal Revenue Services. *Id*. at 626. A letter accompanied the check, which stated that "an additional tax was payable and that the unknown clients owed it." *Id*. at 630. The Ninth Circuit held that disclosure the taxpayers' identity would, in the circumstances of that case, amount to a disclosure of the confidential communications between the attorney and his clients. *Id*.

No analogous situation exists here. *See Dole v. Milonas*, 889 F.2d 885, 889 (9th Cir. 1989) (stating that the *Baird* rule must be applied on a case-by-case basis in light of the circumstances of the case). Tsambis argues that analogous circumstances do exist because Tsambis commenced a lawsuit in Texas, which is funded by the unnamed co-conspirators. Litigating a lawsuit, however, is unlike the letter in *Baird*, which constituted an admission of liability. *See Baird*, 279 F.2d at 633 (stating that the letter "indicates a feeling of guilt for nonpayment of taxes"). Funding a lawsuit in Texas is also unlike the situation in the case on which Tsambis principally relies: *In re Grand Jury Proceedings*, 517 F.2d 666, 673 (5th Cir. 1975). In that case, the Fifth Circuit applied the *Baird* rule because attorneys were called before a Grand Jury to identify and incriminate their clients. *Id*. at 673–74 ("We have . . . a situation in which it is readily apparent that the relators were called to testify before the grand jury for the purpose of incriminating their undisclosed clients as to privileged communication"). The court is not persuaded that *Baird* applies here.

Third, assuming, *arguendo*, that the attorney-client privilege or the *Baird* rule apply, Tsambis lacks standing to assert the privilege on his co-conspirators' behalf. It is axiomatic that standing requires the party requesting relief to have a personal legal interest in the subject matter of the dispute. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In the context of the attorney-client privilege, the relevant legal interest—(*viz.*, the privilege)—belongs to the attorney's client. *Chirac v. Reinicker*, 24 U.S. 280 (1826); *United States v. Partin*, 601 F.2d 1000, 1009 (9th Cir. 1979). This means that a third party, like Tsambis, cannot assert the attorney-client privilege to avoid disclosure. *See, e.g.*, *United*

/// /// ///

/// /// ///

/// /// ///

/// /// ///

*States v. Fortna*, 796 F.2d 724, 732 (5th Cir. 1986) (stating that the attorney-client privilege cannot be asserted vicariously).[2]

Fourth, even if Tsambis could assert the attorney-client privilege on behalf of his co-conspirators in order to avoid disclosing information in his control, his assertion of the privilege would be futile. The attorney-client privilege is not absolute. *Graf*, 610 F.3d at 1156. An essential element to maintaining the privilege requires showing that the privilege has not been waived. *See LightGuard Sys., Inc.*, 281 F.R.D. at 598 (stating that an attorney-client privilege exists if, *inter alia*, protection has not been waived). Waiver generally occurs where privileged information is disclosed to a third-party. *Transamerica Computer v. Int'l Bus. Mach.*, 573 F.2d 646, 651 (9th Cir. 1978) ("[A] disclosure of confidential material constitutes a waiver of the attorney-client privilege only if it is voluntary and not compelled"). If Tsambis possesses information that he believes is protected by his co-conspirator's attorney-client privilege, then the privilege was most likely waived because Tsambis—who is a third party—possess privileged information.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Exobox's Motion to Compel (#26) is GRANTED.

IT IS SO ORDERED.

DATED this 7th day of October, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

---

[2] The record is unclear on whether Tsambis' attorney is also the attorney for the alleged unnamed co-conspirators. If this is the case, then the attorney may have a concurrent conflict of interest requiring withdrawal. *See* NEV. R. PROF'L CONDUCT 1.7(a)(2), *adopted by* LR IA 10-7(a) ("A concurrent conflict of interest exists if . . . [t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client"). If Tsambis' attorney is required to disclose information in this action that may conflict with the interests of the alleged co-conspirators, then a conflict exists.