1

2

3

4              UNITED STATES DISTRICT COURT

5                   DISTRICT OF NEVADA

6                         * * *

7    EXOBOX TECHNOLOGIES CORP.,            Case No. 2:14-cv-00501-RFB-VCF

8                          Plaintiff,      ORDER DENYING MOTION TO DIMISS

9          v.

10   ZACHARY TSAMBIS, et al.,

11                         Defendant.

12

13   **I.      INTRODUCTION**

14           Exobox Technologies Corp. ("Exobox"), a Nevada Corporation, has filed suit against

15   Zachary Tsambis, a Pennsylvania resident, in the District of Nevada, alleging Intentional

16   Interference with Prospective Economic Advantage and Civil Conspiracy for Tsambis's role in

17   interrupting a deal to acquire a majority equity interest in another company.  Claiming that he

18   lacks contacts with Nevada sufficient to subject him to personal jurisdiction, Tsambis has, in the

19   instant motion, moved for Summary Judgment under Fed. R. Civ. P. 12(b)(2).  This Court,

20   however, for the reasons discussed below, finds that Tsambis is subject to personal jurisdiction in

21   Nevada.

22

23   **II.     BACKGROUND**

24           **A.  Facts**

25           Exobox is a Nevada corporation publicly traded on the over-the-counter market.  Exobox

26   has a principle place of business in Long Beach, California and conducts business in Clark

27   County, Nevada.

28           Zachary Tsambis is a resident of Allegheny County, Pennsylvania and claims to have

1   been an Exobox shareholder at all relevant times; Exobox claims Tsambis was not a shareholder.

2   Tsambis is a moderator on the Investorshub ("iHub") website and regularly participates in online

3   messages boards discussing investments, including investments in Exobox.   Exobox claims

4   Tsambis has claimed to be a custodian of records for Exobox and that Tsambis offered Exobox's

5   former CEO $20,000 to step down and appoint Tsambis CEO.   Tsambis does not reside in

6   Nevada and does not do business in Nevada.   Tsambis registered two corporations in Nevada,

7   which he claims never materialized into operating businesses.

8           In early 2014, Exobox announced publicly in a Form 8-K Current Report that it was

9   going to acquire a majority of the equity interests in Cherubim Builders Group, LLC from PDX

10   Partners, Inc. ("Share Exchange").   Exobox claims that the Share Exchange would have raised

11   significant and much-needed funds and that Exobox shareholders would maintain their interest in

12   Exobox through the new public company and would also be given shares of the emergent,

13   publicly traded Cherubim Builders Group company. Tsambis claims the transaction served no

14   legitimate business purpose and violated a shareholders' vote.   The Share Exchange deal was set

15   to close by February 28, 2014.

16           Tsambis used the iHub and other message boards to make statements about Exobox and

17   threatened to file a lawsuit to enjoin Exobox from consummating the Share Exchange.   Tsambis

18   stated on the iHub forums, "I'm of the opinion that this transaction will not go through as it is

19   stated," Compl. ¶ 14, ECF No. 1, "our holdings will become burnt toast if we don't stop this

20   (dilution) deal," and "I'm of the strong belief that some fireworks may go off real soon that may

21   stop the proposed [deal]," Compl. ¶ 15 (alteration in original).   Tsambis also contacted Exobox's

22   CEO directly, saying, "But know there is a die-hard group of large shareholders who I believe

23   would rather see this ship sink then [sic] to see someone else make off with any of the leftover

24   goods . . . ."   Compl. ¶ 16 (alteration in original).   Later, Tsambis used iHub to solicit and obtain

25   funds from other Exobox shareholders to finance the threatened lawsuit.   On or about February

26   28, 2014, Tsambis used these solicited funds to file a lawsuit seeking to enjoin the Share

27   Exchange, in Harris County, Texas.   The Share Exchange was cancelled; Exobox claims this

28   caused it monetary damages.

### B.  Procedure

On April 3, 2014, Exobox filed the Complaint in the present case in the District of Nevada.  In its Complaint, Exobox claims two causes of action.  First, Exobox claims Tsambis intentionally interfered with prospective economic advantage by taking actions which resulted in the termination of the Share Exchange.  Compl. ¶ 31–40.  Second, Exobox claims Tsambis and other to-be-named Exobox shareholders joined in a civil conspiracy to finance litigation intended to disrupt and prevent the Share Exchange.  Compl. ¶ 41–47.

On June 13, 2014, Tsambis filed the instant Motion to Dismiss for lack of personal jurisdiction.  ECF No. 8.

## III.    Motion to Strike

Nestled in Exobox's response to Tsambis's Motion to Dismiss is what appears to be a motion to strike the instant Motion to Dismiss for failure to comply with District of Nevada Local Rule IA 10-2.  Opp'n to Mot. to Dismiss 2:16–24, ECF No. 15.  Local Rule IA 10-2(a) states, "An attorney who is not a member of the Bar of this Court, who has been retained or appointed to appear in a particular case, may do so only with permission of this Court."  The Local rules go on to require that "[a]n attorney whose verified petition is pending shall take no action in this case beyond filing the first pleading or motion."  D. Nev. R. IA 10-2(c).  Local Rule IA 10-2(k) provides that "[f]ailure to comply timely with this Rule may result in the striking of any and all documents previously filed by such attorney, the imposition of other sanctions, or both."

Here, Tsambis filed motions on behalf of himself that Exobox claims were "ghostwritten" by Suzanne J. DuBose, an attorney who is not licensed to practice law in Nevada.  Opp'n to Mot. to Dismiss 2:20–23.  This claim is supported by, among other things, the curious "Certificate of Conference" attached to Tsambis's instant Motion.  Mot. to Dismiss 17.  However, the language of Local Rule IA 10-2 clearly and narrowly contemplates restrictions only on who may "appear" before this Court in a particular case and not broader questions about who may practice law in the State of Nevada.  This Court declines to consider whether the

1   alleged ghostwriting implicates any Nevada laws, and it declines, at this time, to inquire into this

2   matter in the context of deciding the instant motion.  Local Rule IA 10-2 is a discretionary rule

3   as to discipline and sanctions.  The Court declines to exercise such discretion at this time.

4        Exobox's motion to strike is accordingly denied.

5

6   **IV.    Motion for Evidentiary Hearing**

7        In deciding personal jurisdiction, the court may in its discretion order discovery, hold an

8   evidentiary hearing, or rely only on the written submissions.  Doe v. Unocal Corp., 248 F.3d 915,

9   922 (9th Cir. 2001); Data Disc, Inc. v. Sys. Tech. Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.

10  1977) ("Because there is no statutory method for resolving this issue, the mode of its

11  determination is left to the trial court.").

12       Here, the Court finds that there is sufficient evidence in the pleadings and moving papers

13  to render a decision.  Therefore, Tsambis's Motion for an Evidentiary Hearing, ECF No. 7, is

14  denied.

15

16  **V.    Motion of Summary Judgment for Lack of Personal Jurisdiction**

17       For the reasons given below, Tsambis's Motion to Dismiss for Lack of Personal

18  Jurisdiction, ECF No. 8, is denied.

19        **A.  Legal Standard**

20       A plaintiff bears the burden of establishing personal jurisdiction.  Tuazon v. R.J.

21  Reynolds Tobacco Co., 433 F.3d 1163, 1168 (9th Cir. 2006).  When, as here, the Court resolves

22  the motion to dismiss based only on written submissions, a plaintiff must make a prima facie

23  showing of facts that would support personal jurisdiction.  Id.  That is, Plaintiffs "need only

24  demonstrate facts that if true would support jurisdiction."  Ballard v. Savage, 65 F.3d 1495, 1498

25  (9th Cir.1995).

26       To establish that personal jurisdiction over a defendant is proper, a plaintiff must show

27  (1) that the forum state's long-arm statute confers personal jurisdiction and (2) that the exercise

28  of jurisdiction comports with the constitutional principles of due process.  Rio Properties, Inc. v.

1   <u>Rio Int'l Interlink</u>, 284 F.3d 1007, 1019 (9th Cir. 2002).  Because Nev. Rev. Stat. section 14.065

2   permits Nevada courts to exercise jurisdiction to the same extent as the Constitution, this Court

3   need only consider the constitutional principles of due process.  <u>Walden v. Fiore</u>, 134 S. Ct.

4   1115, 1121 (2014).

5               **B.  Analysis**

6                    **1.  General Jurisdiction**

7          Exobox argues that Nevada has general personal jurisdiction over Tsambis.  This

8   argument is not convincing.

9          Personal jurisdiction can be general or specific.  General personal jurisdiction is an

10  exacting standard which requires "continuous and systematic" contacts that "approximate

11  physical presence."  <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 801 (9th Cir.

12  2004).  "Put another way, a defendant must not only step through the [jurisdictional] door, it

13  must also sit down and make itself at home."  <u>Tuazon</u>, 433 F.3d at 1169 (internal quotation

14  marks omitted); <u>see</u> <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S. Ct. 2846, 2853–

15  54 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the

16  individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is

17  fairly regarded as at home.").

18         In support of its argument for general jurisdiction, Exobox contends that Tsambis

19  incorporated, and is the sole managing member of, two Nevada limited liability companies and

20  in that role "would have been the one to appoint" the Nevada registered agents for these

21  companies.  <u>Id.</u> at 4:7–10; <u>accord</u> <u>Id.</u> 4:12–14.  Exobox claims that, as of the time of filing, one

22  of these companies' business licenses had been revoked but that the other license was still active.

23  Exobox further states that Tsambis is not only a shareholder who posts messages, but that he also

24  is highly involved in Exobox's business through online messaging, message board moderation,

25  online organization of shareholders, and operating his own Exobox-focused website.  Tsambis

26  acknowledges the registration of the two Nevada companies (which he claims never conducted

27  any business), three vacation trips to Nevada, and involvement with Exobox through online

28  websites.  Mot. to Dismiss ¶ 17; Aff. of Zachary Tsambis 1–2.

1    The Court finds that Tsambis' connections to Nevada and his actions within it are

2    insufficient to establish general jurisdiction. The two Nevada corporations do not appear to have

3    actually done business in Nevada. Tsambis' online contacts are focused on particular

4    transactions of Exobox and do not suggest systemic contacts with Nevada. Tsambis has no other

5    contacts which could be construed as continuous and systemic.

6    **2. Specific Jurisdiction**

7    Exobox does, however, make out a prima facie case for specific jurisdiction.

8    Specific jurisdiction requires certain minimum contacts and must not offend traditional

9    notions of fair play and substantial justice. Schwarzenegger, 374 F.3d at 801 (quoting Int'l Shoe

10   Co. v. Wash., 326 U.S. 310, 216 (1945)). This "minimum contacts" test requires three things:

11   (1) the defendant must have purposefully directed specific activities toward the state forum, (2)

12   the plaintiff's claim must arise out of or relate to those specific forum-related activities, and (3)

13   the exercise of jurisdiction must comport with fair play and substantial justice, i.e. be reasonable.

14   Schwarzenegger, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two

15   elements, and then, if the plaintiff successfully does so, the defendant has the burden of

16   presenting a compelling case that jurisdiction would be unreasonable. Id.

17   **a. Purposeful Direction**

18   The purposeful direction requirement has three necessary elements. To satisfy the

19   purposeful direction requirement the defendant "must have (1) committed an intentional act, (2)

20   expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

21   suffered in the forum state." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124,

22   1128 (9th Cir. 2010). This is sometimes referred to as the "effects test" or "Calder test." See

23   Calder v. Jones, 465 U.S. 783 (1984).

24   **i. Intentional Act**

25   An intentional act requires "an intent to perform an actual, physical act in the real world,

26   rather than an intent to accomplish a result or consequence of that act." Brayton Purcell, 606

27   F.3d at 1128. It is undisputed that Tsambis acted intentionally when he posted several messages

28   online regarding Exobox. He also acted intentionally when he filed a lawsuit in Texas directed

- 6 -

1    at Exobox in Nevada.

2                            **ii.    Expressly Aimed**

3         Express aiming requires more than mere foreseeability, it requires conduct expressly

4    aimed at the forum state.  Brayton Purcell, 606 F.3d at 1129.  The express aiming requirement is

5    satisfied when defendant is alleged to have engaged in wrongful conduct targeted at plaintiff

6    whom defendant knows to be a resident of the forum state.  CollegeSource, Inc. v. AcademyOne,

7    Inc., 653 F.3d 1066, 1077 (9th Cir. 2011).   Here, Tsambis has posted online messages and filed

8    a Texas lawsuit against Exobox, which he knew to be a Nevada corporation, and in doing so

9    expressly aimed his conduct into Nevada.   Tsambis argues that this action is inadequate to

10   demonstrate express aiming.  This Court disagrees.

11        Ninth Circuit precedent regarding the express aiming requirement clearly establishes that

12   behavior, such as that allegedly done by Tsambis, is "expressly aimed."  For example, in Myers

13   v. Bennett Law Offices, the Ninth Circuit found that a Utah defendant had expressly aimed his

14   conduct into Nevada when he requested credit reports on Nevada residents. 238 F.3d 1068, 1073

15   (9th Cir. 2001).  Perhaps even more instructive, in Bancroft & Masters, Inc. v. Augusta Nat. Inc.,

16   the Ninth Circuit held that a letter sent from Georgia to a Virginia domain registration company

17   targeting a California corporation constituted express aiming at California. 223 F.3d 1082, 1088

18   (9th Cir. 2000) holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et

19   L'Antisemitisme, 433 F.3d 1199 (9th Cir. 2006).  In Bancroft, the letter to the Virginia domain

20   registration company was sent with the intention of triggering the Virginia company's dispute

21   resolution procedures which would interfere with the California company's internet operations.

22   Here, Exobox claims, litigation was begun in Texas with the intent to interfere with a Nevada

23   company's business transactions.  This is expressly aimed conduct.

24        Tsambis asks this Court to read the recently decided Supreme Court case, Walden, 134 S.

25   Ct. 1115, as overturning Bancroft and related cases that say contact with a resident in Nevada is

26   sufficient to find conduct is expressly aimed.  The Court declines to do so for two reasons.  First,

27   Walden is factually distinguishable from this case as well as from Bancroft.  In Walden, a pair of

28   professional gamblers were traveling from San Juan to Las Vegas, through Atlanta, with a

substantial amount of cash.  Id. at 1118.  In Atlanta, the cash was seized by a DEA agent who thereafter allegedly drafted a false and misleading affidavit to show probable cause for forfeiture. Id. at 1118–20.  The Supreme Court held that a Nevada court was not allowed to exercise personal jurisdiction over a defendant on the basis that he knew his allegedly tortious conduct in Georgia would have delayed the return of funds to the claimants with connections to Nevada. The Supreme Court explained that "[t]he plaintiff cannot be the only link between the defendant and the forum."  The Court further explained that "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id. at 1122–23.

In Walden, it was "undisputed that no part of petitioner's course of conduct occurred in Nevada." Id. at 1124.  In contrast, here (as in Bancroft) the Plaintiffs do not rely on the "random, fortuitous, or attenuated contacts" or the "unilateral activity" of a plaintiff to establish contact with the forum state.  Id. at 1123.  Exobox points to the unilateral actions of Tsambis directed to the forum state.  In Walden, Defendant directed his activities at an entity that incidentally happened to be going to Nevada.  In this case, Tsambis chose to direct his activities to an entity known to be in Nevada.

Second, the Supreme Court's opinion in Walden stops well short of overturning the Bancroft line of cases.  Rather, the Supreme Court decided Walden narrowly on the facts before it.  Until a higher court overrules it, Bancroft is still the law of this Circuit and binds this Court. Because Bancroft is more analogous—and Walden is distinguishable—from the instant case, this Court must apply Bancroft.  Accordingly, this Court finds that Tsambis has expressly aimed his conduct into Nevada.

### iii.   Harm in Forum State

"The final element requires that [the Defendant's] conduct caused harm that it knew was likely to be suffered in the forum," but "does not require that the 'brunt' of the harm be suffered in the forum."  Brayton Purcell, 606 F.3d at 1131.  Exobox is a Nevada corporation that conducts business in Clark County, Nevada.  Complaint ¶ 1.  Exobox claims Tsambis "knew Exobox was a Nevada company." Opp'n to Mot. to Dismiss 7:21.  Here, it is foreseeable that Exobox would

be harmed by the online posts and the Texas lawsuit, and it is, thus, also foreseeable that harm would occur in Nevada, where Exobox was incorporated.

### b.   Relation to Specific Forum Activities

There is no dispute that Exobox's claim arises out of or relate to Tsambis's online postings and his Texas lawsuit.

### c.   Reasonableness/Fair Play and Substantial Justice

In evaluating whether the assertion of personal jurisdiction would comport with fair play and substantial justice, "courts in 'appropriate case[s]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–77 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).   The burden is on Tsambis to make a compelling case why jurisdiction would be unreasonable.  Schwarzenegger, 374 F.3d at 802.  It is rare for fair play and substantial justice to "defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities."  Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty., 480 U.S. 102, 116 (1987) (Brennan, J., concurring) (alteration in original) (quoting Burger King, 471 U.S. at 477–78).

To support this argument, Tsambis first recites a litany of fifteen things he has not done in Nevada including reside, maintain a place of business, apply for licenses or establish his family.  Mot. to Dismiss ¶ 20.  Second, Tsambis indicates that litigating in Nevada would be a burden.  Id. at ¶ 21.  Next, Tsambis points out that there is already a pending lawsuit in Texas and that there will be two actions in two separate states which will waste judicial resources and might end in different results.  Id. at ¶ 22.  Finally, Tsambis suggests Nevada "has no real interest in adjudicating the dispute" because Exobox's "nerve center" has not been in Nevada.  Id.  These arguments are not compelling.

First, Tsambis's list of things he has not done in Nevada simply reiterates his arguments

1   about minimum contacts and speaks more to the issue of a lack of general jurisdiction.

2   Tsambis's suggestion that Nevada has no real interest is similarly inapposite.  "A State generally

3   has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries

4   inflicted by out-of-state actors."  Burger King, 471 U.S. at 473.  It is not disputed that Exobox is

5   incorporated in Nevada, and Tsambis's contention that Exobox's nerve center was in Texas—

6   and that by extension Texas may *also* have an interest—does not negate Nevada's interest in its

7   corporate citizen's welfare.

8          The mere fact that local litigation is inconvenient—or some other forum may be more

9   convenient—is not enough;  rather Tsambis "must show that jurisdiction in [Nevada] would

10  make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe

11  disadvantage in comparison to his opponent.'"  Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir.

12  1990) (quoting Burger King, 471 U.S. at 478).  As the Ninth Circuit observed twenty-four years

13  ago, requiring a nonresident to defend in a distant state "in this era of fax machines and discount

14  air travel" is not unreasonable.  Id.  Remote litigation is even more convenient in the era of

15  electronic filing and telephonic hearings.  Relatedly, while litigation in two different states is less

16  efficient that litigation in one state, it is unclear how this affects fairness to Tsambis (beyond the

17  inconvenience addressed above).  Jurisdiction in Nevada is not unreasonable and is not an affront

18  to fair play and substantial justice.

19         Therefore, Tsambis has the minimum contacts necessary, pursuant to Schwarzenegger,

20  for the exercise of specific personal jurisdiction in Nevada.

21  **VI.    Conclusion**

22         Because, as discussed above, Exobox has made out a prima facie case for specific

23  personal jurisdiction, Tsambis's Motion to Dismiss must be denied.  However, Tsambis may

24  raise the issue of personal jurisdiction later should evidence be available that supports such a

25  motion at that time.  Accordingly,

26         IT IS ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction,

27  ECF No. 8, is DENIED without prejudice to renewing the issue.

28         IT IS FURTHER ORDERED that Defendant's Motion Requesting Evidentiary Hearing,

ECF. No. 7, is DENIED with prejudice.

IT IS FURTHER OREDERED that Plaintiff's Motion to Strike, ECF No. 15 at 2:16–24, is DENIED with prejudice.

Dated: January 6, 2015.

_____
RICHARD F. BOULWARE
UNITED STATES DISTRICT JUDGE