1

2

3

4                    UNITED STATES DISTRICT COURT

5                        DISTRICT OF NEVADA

6                              * * *

7   EXOBOX TECHNOLOGIES CORP.,            Case No. 2:14-cv-00501-RFB-VCF

8              Plaintiff,                          **ORDER**

9        v.                               Defendants' Motion for Summary Judgment
                                                    (ECF No. 214)
10  ZACHARY TSAMBIS, *et al.*,

11             Defendants.

12      **I.      INTRODUCTION**

13          This case involves Plaintiff Exobox Technologies Corp.'s ("Exobox") allegations against

14  various defendant shareholders relating to defendants' actions in allegedly preventing a major deal

15  from going through. After having ruled on all outstanding motions, for the following reasons, the

16  Court denies Defendants' Motion for Summary Judgment. ECF No. 214.

17

18      **II.     LEGAL STANDARD**

19          Summary judgment is appropriate when the pleadings, depositions, answers to

20  interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no

21  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

22  Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering

23  the propriety of summary judgment, the court views all facts and draws all inferences in the light

24  most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir.

25  2014). If the movant has carried its burden, the non-moving party "must do more than simply show

26  that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a

27  whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

28

1    issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation

2    marks omitted).

3

4        **III.    UNDISPUTED AND DISPUTED FACTS**

5             **A.  Undisputed Facts**

6        In early 2014, Exobox announced publicly via a Form 8-K Current Report that it was going

7    to enter a share exchange agreement with PDX Partners, Inc. ("PDX") (the "Share Exchange").

8    Pursuant to the Share Exchange, Exobox would acquire a majority of the equity interest in

9    Cherubim Builders Group, LLC ("CBG") from PDX.   The Share Exchange was set to close on or

10   before February 28, 2014. Because the Share Exchange was announced publicly through EDGAR,

11   Defendants knew of the agreement.

12       Defendant Zachary Tsambis ("Tsambis") is a moderator for on an online investor message

13   board dedicated to Exobox on the website Investorshub.com ("iHub"), and goes by the screenname

14   ZTsambis. Defendant James Patrick Kerr ("Kerr") also moderates the site, and goes by the

15   screenname TheLaserGuy.

16       On February 6, 2014, Tsambis reached out to other Exobox shareholders via iHub and said,

17   "Any EXBX shareholder who would like to discuss privately this newly announced acquisition,

18   please Email me at ztsambis@bahasweb.com and please include your phone number." A few days

19   later Tsambis solicited help from other Exobox shareholders by posting the following: "Unless

20   current shareholders band together real fast, I so hate to say this, but I think all our holdings will

21   become burnt toast if we don't stop this (dilution) deal. Can it be done? Yes in my opinion. But

22   unlike before, we're going to need a very high-priced securities attorney (which we may have

23   already found). . . . At this point, after what I invested in this company, I have no problem throwing

24   a little more money for a securities lawyer." That same day Tsambis also said, "I'm of the opinion

25   that this transaction will not go through as it is stated." Tsambis's solicitations continued the

26   following day: "If anyone here thinks the RM deal STINKS, send me an Email at

27   ztsambis@bahasweb.com (except for all you who have already been emailing me). I'm of the

28

1   strong belief that some fireworks may go off real soon that may stop this proposed 2000:1 R/S

2   bull$h!t madness . . . ."

3          On February 28, 2014, Defendants filed a lawsuit in the District Court of Harris County,

4   Texas. The names of everyone who funded the Texas lawsuit was provided to Exobox by defense

5   counsel in this matter.

6          Tsambis emailed Exobox's CEO directly and said, "But know there is a die-hard group of

7   large shareholders who I believe would rather see this ship sink then [sic] to see someone else

8   make off with any of the leftover goods . . . ." This was posted on iHub for everyone to see. At one

9   point, Tsambis offered Exobox's former CEO $20,000.00 to step down and appoint Tsambis as

10  CEO so Tsambis could use Exobox as a "pump-and-dump." Tsambis also threatened Exobox's

11  former CEO by stating "we will never let you succeed."

12         On March 11, 2014, Defendants were assured that "[e]very lawyer that has looked at the

13  evidence has stated this is a slam dunk for $75K plus reimbursement for attorney's fees. . . . When

14  the judgment and attorney's fees are recovered I assure you that all of your money will be returned

15  along with your percentage of the judgment."

16         After Defendants filed the Texas Case, PDX cancelled the Share Exchange and refused to

17  go forward with the transaction. The Texas case was later dismissed with no decision on the merits.

18                    **b. Disputed Facts**

19         Plaintiff argues that Exobox's shareholders lost the opportunity to own 250,000 shares of

20  the new CBG structure. Further, Plaintiff argues that Exobox's shareholders lost the funds it would

21  have used to get current with the SEC, which would have allowed Exobox to function as a shell

22  for a reverse merger transaction worth $250,000.

23         Defendants argue that Plaintiff suffered no damages as a result of the failed merger between

24  Exobox and PDX.

25

26  **IV.      DISCUSSION**

27         The Defendants' motion only addresses two causes of action: 1) Intentional Interference

28  with Prospective Economic Advantage; and 2) Civil Conspiracy. The Court addresses each below.

- 3 -

### a.  Intentional Interference with Prospective Economic Advantage

Under Nevada law, "the tort of intentional interference with prospective economic advantage requires proof of the following elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct." Wichinsky v. Mosa, 847 P.2d 727, 729-30 (Nev. 1993).

The types of relations included in an IPEA claim "include any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff." Rest. (Second) of Torts § 766B, cmt. C (1979); Las Vegas-Tonopah-Reno Stage Line, Inc. v. Gray Line Tours, 792 P.2d 386, 388 n.1 (Nev. 19900 (applying Restatement of Torts to IPEA claim).

The level of intent required is "that the actor desires to cause consequences of his act, or that he believes that his consequences are substantially certain to result from it." Rest. (Second) of Torts § 8A. Interference is not privileged if it is improper. Gray Line, 792 P.2d at 388 n.1; Id. § 767 cmt. b.

Defendants argue that there is no evidence that their alleged conduct was intended to harm plaintiff or that there was actual harm to the plaintiff as a result of the defendant's conduct. In support of this, Defendants argue that CEO Irvine has limited knowledge of how corporations operate, and because he himself was unable to articulate how defendants intentionally interfered during his deposition, the Court should rule in favor of Defendants. Defendant also argues that the plaintiff had no authority or basis to enter into any agreements or to issue any stock.

The Court finds that Plaintiff has submitted evidence, in the form of expert testimony, that it suffered harm as a result of Defendants' actions. See Pl.'s Mot. Summ. J., Ex. 12 ("Exobox shareholders may have lost opportunity of owning 250,000 of the newly proposed structure that could have resulted to existing shareholders a gain of$ 199,000 as calculated above subject to the validity of assumptions used. Moreover, the shareholders may have also lost the opportunity of realizing the value of $250,000 as a shell for reverse merger transaction.").

1      Further, with regards to intent, the Court does not find that Defendants' arguments

2 articulated in their Motion for Summary Judgment, provides a legal basis for finding summary

3 judgment in favor of Defendants on a claim for intentional interference with prospective economic

4 advantage. However, the Court does consider the narrow question of whether by funding the Texas

5 lawsuit, the defendant shareholders intended to interfere with Plaintiff's prospective economic

6 advantage.

7      The Court finds that in this case, disputed material facts preclude granting summary

8 judgment where defendant shareholders who funded the Texas lawsuit were assured by Tsambis

9 that they would receive a portion of the judgment. See Pl.'s Mot. Summ. J., Ex. 5 ("[e]very lawyer

10 that has looked at the evidence has stated this is a slam dunk for $75K plus reimbursement for

11 attorney's fees. . . . When the judgment and attorney's fees are recovered I assure you that all of

12 your money will be returned along with your percentage of the judgment."). The Court finds that

13 this statement suggests that, contrary to the Defendants' justification for filing the suit—that it

14 would benefit the company by forcing a shareholder meeting—this statement suggests that the suit

15 was initiated in order to harm the company, and in the process, reward the shareholders rather than

16 the company itself.

17      Therefore, the Court DENIES Defendants' motion as to the claim for intentional

18 interference.

19          **b.  Civil conspiracy**

20      "An actionable civil conspiracy claim is a combination of two or more persons who, by

21 some concerted action, intend to accomplish some unlawful objective for the purpose of harming

22 another, which results in damage." Collins v. Union Federal Sav. & Loan Ass 'n, 662 P.2d 610,

23 622 (Nev. 1983).

24      Defendants argue that *Defendants* have offered no evidence demonstrating any concerted

25 action with an intention to accomplish any unlawful objective for the purpose of harming another.

26 However, Defendants have appeared to confuse the legal standard regarding motions for summary

27 judgment. This argument does not actually support the granting of a motion in their favor. That a

28 defendant has not provided evidence in favor of a plaintiff's case is not grounds for granting

1  summary judgment in a defendant's favor. Defendant fails to point to evidence demonstrating, for

2  example, that none of the defendants intended to accomplish a lawful objective. The Court

3  therefore rejects this argument as a basis for summary judgment.

4  Defendants also argue that there is no basis in fact or reason to suggest that Defendants

5  intended to harm Plaintiff by seeking the protection of a Texas court to force a required annual

6  shareholder meeting. However, Defendants fail to support this statement with citation to the record

7  in support of this statement. For example, Defendants have not provided any declarations,

8  excerpted depositions, or affidavits by defendant shareholders in support of this alleged motivation

9  for initiating the Texas action.

10  Third, Defendants argue that Plaintiff has suffered no damages because Plaintiff has no

11  assets and is a shell corporation; any alleged damages are therefore speculative. Again, Defendant

12  does not support this statement with any evidence.

13  Finally, Defendants argue that because Plaintiff did not timely respond to Rule 36 requests,

14  the Plaintiff admits that there are no damages as it relates to the failed share exchange agreement.

15  However, Plaintiff argues that Exobox was never served with any Requests for Admission; the

16  first time Exobox saw the Requests was in connection with the filing of Defendants' Motion.

17  Opp'n at 5; Takos Decl., Ex. 1 at ¶ 2.5.

18  The Court therefore DENIES Defendants' Motion with respect to the civil conspiracy

19  claim.

20

21  **V.    CONCLUSION**

22  The Court therefore DENIES Defendants' Motion for Summary Judgment. ECF No. 214.

23  **DATED**: July 15, 2016.

24

25  **RICHARD F. BOULWARE, II**

26  **UNITED STATES DISTRICT JUDGE**

27

28

- 6 -